<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LTL MANAGEMENT LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 23-3649 (ZNQ) (RLS) |
| **DR. THERESA SWAIN EMORY, *et al.*,** | **OPINION** |
| Defendants. | |

<u>**QURAISHI, District Judge**</u>

    **THIS MATTER** comes before the Court upon a Motion to Dismiss (the "Motion", ECF No. 16) filed by Defendants Dr. Theresa Emory ("Emory"), Dr. John Maddox ("Maddox"), and Dr. Richard Kradin's ("Kradin") (collectively "Defendants"). Defendants filed a brief in support of their Motion. ("Defs.' Moving Br.", ECF No. 16-1.) Plaintiff LTL Management LLC ("Plaintiff" or "LTL") filed an Opposition. ("Pl.'s Opp'n Br.", ECF No. 19). Defendants filed a Reply. ("Reply Br.", ECF No. 20).

    The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons outlined below, this Court lacks personal jurisdiction over Defendants. Accordingly, Defendants' Motion will be GRANTED.

## I.   **BACKGROUND**

### A. FACTUAL BACKGROUND

The Court recites only the facts relevant to its personal jurisdiction findings. Defendants are citizens of Virginia and New Hampshire. (Compl. ¶¶ 13-15, ECF No. 1.) LTL is a North Carolina limited liability company with a principal place of business in New Jersey. (*Id.* ¶ 10.) LTL's sole member, however, is Johnson & Johnson Holdco (NA) ("Johnson & Johnson"), and as such, LTL is a citizen of New Jersey. (*Id.* ¶ 11.)

Kradin, Maddox, and Emory have all made careers testifying on behalf of plaintiffs in asbestos-related litigation. (*Id.* ¶¶ 19-27.) Kradin specifically "has been disclosed as a plaintiff's expert in over 200 talc/mesothelioma cases against LTL." (*Id.* ¶ 24.) He has testified at both depositions and trials against LTL. (*Id.*) Maddox also testified in New Jersey for a plaintiff against LTL at least once. (*Id.* ¶ 27.) Emory is not alleged to have ever testified against LTL, but she is alleged to have been disclosed as an expert witness in New Jersey cases against LTL. (*See id.* ¶¶ 19-21.)

In March 2020, Defendants published an article (the "Article") that "purported to provide incremental substantiation for the claim that the use of cosmetic talc powder causes mesothelioma." (*Id.* ¶¶ 28, 141.) The Article presented "75 additional subjects, with malignant mesothelioma, whose only known exposure to asbestos was cosmetic talc." (*Id.* ¶ 29.) LTL alleges generally that this Article was fraudulent and misrepresentative. (*See generally id.*) LTL also alleges that at least one of the Article's subjects was a New Jersey resident who filed a case in New Jersey against LTL. (*See id.* ¶ 74.) The Article does not expressly mention LTL or Johnson &

Johnson in making its findings. (*See generally* the Article[1], Ex. A to Compl., ECF No. 1-2.) Plaintiff alleges, however, that Defendants, by impugning the safety of all cosmetic talc products, targeted LTL's products because they were "the leading brands among a discrete and limited number of cosmetic talc products in the market." (*See* Compl. ¶ 152.)

The Article was published in the American Journal of Industrial Medicine (the "Journal"). (*Id.* ¶ 37.) The Journal is operated by the publishing company Wiley, which is headquartered in New Jersey. (*Id.* ¶ 41.) A PDF version of the Article manuscript was sent to New Jersey for peer review, and the Article was published ten days after it was submitted to the Journal. (*Id.* ¶¶ 39-40.)

## B. PROCEDURAL HISTORY

Plaintiff filed its Complaint against Defendants on July 7, 2023 alleging three counts arising from Defendants' publication of the Article: (1) Injurious Falsehood/Product Disparagement[2]; (2) Fraud; and (3) a Lanham Act violation under Section § 43(a), 15 U.S.C. § 1125(a). (*Id.* ¶¶ 145-76.) On September 15, 2023, Defendants moved to dismiss on three primary grounds: lack of standing, lack of personal jurisdiction, and failure to state a claim. (*See generally* Defs.' Moving Br.)

---

[1] A Court may consider at the motion to dismiss stage a "document integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted).

[2] The Third Circuit has noted that the terminology in this area of law is confusing. Count I of the Complaint asserts a claim for "injurious falsehood / product disparagement." (Compl. ¶¶ 145–61.) "New Jersey law recognizes product disparagement as a cause of action emanating from the more general tort of injurious falsehood." *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 296 (citing *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131 (3d Cir. 1977)). However, in the Moving and Reply briefs, Defendants refer to the Count I claim as trade libel. This is because "[t]rade libel has also been referred to as "product disparagement." *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 244 n.7 (3d Cir. 2023). For consistency, here the Court uses the term "product disparagement."

## II.   **LEGAL STANDARD**

### A.   **RULE 12(b)(1)**

Standing under Article III of the United States Constitution is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). Under Rule 12(b)(1)[3], "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual. *Schering Plough*, 678 F.3d at 243. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because . . . it does not present a question of federal law, or because . . . some other jurisdictional defect is present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When reviewing a facial attack, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Although the plaintiff bringing an action in federal court bears the burden of establishing jurisdiction, upon reviewing a facial attack, a "court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. The

---

[3] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Aichele*, 757 F.3d at 358.

**B.     RULE 12(b)(2)**

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (interior quotation marks omitted); *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) ("Once the motion is made, plaintiff must respond with actual proofs, not mere allegations" (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "If the district court does not hold an evidentiary hearing, '[a] plaintiff[] need only establish a prima facie case of personal jurisdiction.'" *Metcalfe*, 566 F.3d at 330 (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). To meet the prima facie burden, a plaintiff needs to establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to confer personal jurisdiction. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). If a plaintiff can establish a prima facie case, the Court is "required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330.

In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir.

2004) (citation omitted). New Jersey's long-arm statute "provides for jurisdiction up to the limits of the protection afforded to nonresidents by the Due Process Clause of the Fourteenth Amendment." *Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (citation omitted); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). A court has jurisdiction, therefore, if it is determined that the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Federal courts are authorized to exercise two types of personal jurisdiction: general or specific. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction exists when a defendant's "affiliations with the State are 'so continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, general jurisdiction applies when an individual or corporation is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("'[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'" (quoting *Daimler*, 571 U.S. at 137 (2014)). "With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137.

Specific jurisdiction, on the other hand, allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to" those contacts; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (internal quotation

6

marks and citations omitted). The first element, "purposeful availment," focuses "on contacts that the defendant itself generated within the forum state." *Redi-Data, Inc. v. Spamhaus Project*, No. 20-17484, 2022 WL 3040949, at *4 (D.N.J. Aug. 2, 2022) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This element is designed to prevent defendants from "being haled into a forum 'solely as the result of random, fortuitous, or attenuated contacts,' or due to the 'unilateral activity of another party or third person.'" *Id.* (quoting *Burger King*, 471 U.S. at 475).

The "arise out of or relate to" element varies based on the type of claim brought. *Id.* at *4 (citing *O'Connor* 496 F.3d at 317). "To establish causation, the 'causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.'" *Id.* (quoting *O'Connor*, 496 F.3d at 323). Tort claims, however, "'require[] a closer and more direct causal connection than' but-for causation." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) (quoting *O'Connor*, 496 F.3d at 320-23). For specific jurisdiction to attach to a defendant accused of a tort, "[t]he defendant must have benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits." *Id.* (citing *O'Connor*, 496 F.3d at 323). Intentional tort claims require even more from the plaintiff; the plaintiff must show that "'[t]he defendant . . . expressly aimed [its] tortious conduct at the forum' to make the forum 'the focal point of the tortious activity.'" *Id.* (second alteration in original) (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) ("[T]he plaintiff [must have] felt the brunt of the harm in the forum")).

For the final element, "only in rare cases do the minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *3 Lab, Inc. v. Kim*, No.

07-1056, 2007 WL 2177513, at *5 (D.N.J. July 26, 2007) (alteration in original) (internal quotations and citations omitted). Only if all three elements are met can specific jurisdiction attach to a defendant. *See Goodyear*, 564 U.S. at 923-24.

## III.   DISCUSSION[4]

### A.   RULE 12(b)(1) ANALYSIS

Article III limits federal courts' jurisdiction to actual "cases or controversies." U.S. Const. art. III. § 2.  This requirement places the burden on plaintiffs to establish their "standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  At the pleading stage, Article III requires a plaintiff to allege facts showing (1) an "injury in fact;" (2) a causal connection, or traceability, between that injury and the conduct complained of; and (3) that such injury will likely be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Here, Defendants only dispute whether Plaintiff has satisfied the traceability requirement necessary to establish standing.[5]

Traceability refers to a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal citations omitted); *see also Schering Plough*, 678 F.3d at 248–49 (plaintiff must allege facts showing injury "because of" defendant's misconduct). An "indirect causal relationship will suffice so long as there is a fairly traceable connection between the alleged injury in fact and the alleged

---

[4] The parties do not dispute, at least for purposes of this Motion, that New Jersey law governs Plaintiff's claims. *See* Pl.'s Opp'n Br. at 21 n.3 ("Defendants apply New Jersey law, and at least for present purposes, [Plaintiff] will do the same."). As such, the Court applies New Jersey law for the purposes of this Motion.

[5] Given Defendants' Motion is founded solely on the Complaint, it constitutes a facial challenge to this Court's jurisdiction. *See Schering Plough*, 678 F.3d at 243.

conduct of the defendant." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (internal citations omitted).

Defendants argue that Plaintiff cannot satisfy its traceability requirement because "the timing of the events alleged in the Complaint shows the [Defendants] did not and could not have caused [Plaintiff's] alleged harm." (Defs.' Moving Br. at 7.) Defendants contend that Plaintiff fails to allege any facts showing a declining "demand for or sales of talc products" between "March 2020 (when the Article was published) and May 2020 (when J&J discontinued talc sales)." (*Id.* at 8.) Defendants also argue that Plaintiff's "harm is too attenuated and punctured by too many intervening independent factors" other than Defendants' publication of the Article. (*Id.* at 8–10.)

Despite Defendants' arguments, the Court finds that Plaintiff's claims survive Rule 12(b)(1) scrutiny. First, Plaintiff has sufficiently alleged a sequence of events establishing that Defendants' actions are "fairly traceable" to Plaintiff's harm. Specifically, Plaintiff alleges that: (1) the "Article was published in March 2020" and it contained statements that Defendants knew were false; (2) "the sales volume and profits from Johnson's Baby Powder declined in 2020"; (3) Defendants' "statements were a cause of this sales decline"; and that in May 2020, Plaintiff announced the "discontinuation of talc-based Johnson's Baby Powder in the United States and Canada." (Compl. ¶¶ 65–66, 141–42.) Plaintiff alleges that part of the decision to discontinue talc-based products was "fueled by misinformation around the safety of the product," including the "misinformation" in the Article. (*Id.* ¶ 142.) Contrary to Defendants' argument, Plaintiff alleges that its harm occurred *after* the Article was published.[6] Thus, at this stage of the litigation, this sequence of Defendants' alleged actions corresponds with the ultimate harm Plaintiff suffered.

---

[6] Defendants rely on *In re Am. Med. Collection Agency, Inc. v. Customer Data Sec. Breach Litig.*, Civ. No. 19-2904, 2021 WL 5937742, at *11 (D.N.J. Dec. 16, 2021), for the proposition that a plaintiff cannot establish Article III "traceability where harm occurred before conduct alleged." However, such reliance is misplaced because the Complaint alleges that the Article was published before the alleged harm occurred.

Additionally, despite Defendants' arguments, the presence of intervening factors is not fatal to Plaintiff's traceability requirement at this stage of the proceeding.  The Third Circuit has described the traceability requirement "as akin to 'but for' causation" and has "found the traceability requirement met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." *Edmonson v. Lincoln Nat. Life. Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013); *see also Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (cautioning against "wrongly equat[ing] . . . injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation").  Even so, Plaintiff rejects Defendants' characterization that the intervening factors were independent.  Instead, Plaintiff alleges that the third-party statements include the "republication of the Article's claims by the asbestos mass tort plaintiffs' bar for whom the Authors work" and that such "promotion" of the Article is "entirely foreseeable."  (Compl. ¶ 42; Pl.'s Opp'n Br. at 13.)  Plaintiff's showing is further supported by the several other examples of instances where Defendants themselves republished statements from the Article as well the republication of the Article's statements by various online outlets. (*See* Compl. ¶¶ 42–52.)

These allegations, taken together, demonstrate an "indirect causal relationship" sufficient to establish that Plaintiff's alleged harm is "fairly traceable" to Defendants' alleged conduct.  *See Toll Bros.*, 555 F.3d at 142.  Accordingly, Defendants' Motion to Dismiss the Complaint under Rule 12(b)(1) is denied.

**B.    RULE 12(b)(2) ANALYSIS**

Nonetheless, for the reasons set forth below, the Court finds that Plaintiff fails to allege facts sufficient to show it is appropriate for this Court to exercise personal jurisdiction over Defendants. Specifically, this Court cannot exercise general jurisdiction, and Plaintiff does not

meet its burden of alleging sufficient contacts to establish that Defendants purposefully availed themselves of the laws of this state.

      1.    General Jurisdiction

"To achieve general jurisdiction over an individual or corporation, affiliations with the forum state must be 'so continuous and systematic as to render them essentially at home in the forum State.'" *Redi-Data*, 2022 WL 3040949, at *3 (quoting *Daimler*, 571 U.S. at 127). If "a defendant's contacts 'plainly [do] not approach' the quantity required for general jurisdiction, [the] Court need not inquire as to the other means by which a defendant can satisfy general jurisdiction." *Id.* (alterations in original) (quoting *Daimler*, 571 U.S. at 139 n.19).

Here, the Complaint identifies that none of the Defendants are citizens of New Jersey. (Compl. ¶ 17.) It also does not allege that Defendants have property in New Jersey, practice medicine in New Jersey, or hold any financial accounts in New Jersey. (*See generally id.*) As such, because Plaintiff does not allege any facts to indicate that Defendants are residents of New Jersey or have "continuous and substantial" contacts in New Jersey, Plaintiff's allegations do not suggest that Defendants are "at home" in New Jersey. *See Provident Nat'l Bank*, 819 F.2d at 438. The Court therefore finds it cannot exercise general jurisdiction over Defendants.

      2.    Specific Jurisdiction

Plaintiff's sole contention appears to be that this Court can exercise specific jurisdiction over Defendants. (*See* Pl.'s Opp'n Br. 14-20.) As to the first prong of the Court's specific jurisdiction analysis, Plaintiff contends that the following contacts are sufficient to show that all three Defendants purposefully availed themselves of the privilege of conducting activities in New Jersey: (1) Defendants sent a PDF manuscript of the Article to their New Jersey-based publisher for peer review (*id.* at 16); (2) Kradin served as a contributing editor with the New Jersey-based

publisher "at least at one point" (*id.* at 15); (3) Emory and Kradin both served as expert witnesses in cases filed in New Jersey against LTL (*id.* at 16-17); (4) Kradin has given deposition testimony in New Jersey talc cases against LTL (*id.* at 17); (5) subjects referenced in the Article are New Jersey residents who filed their cases in New Jersey (*id.*); (6) Defendants knew that LTL's principal place of business was New Jersey when they published the Article (*id.*); and (7) Maddox traveled to New Jersey to testify in two LTL talc trials (*id.* at 17).

In seeking to show how these allegations establish a factual basis for personal jurisdiction over each Defendant, Plaintiff fails to carry its burden of establishing that these alleged contacts are sufficient to establish purposeful availment. Specifically, Plaintiff provides no relevant legal support to suggest that any of the above allegations in the Complaint constitute constitutionally acceptable contacts such that this Court can exercise personal jurisdiction.

> a) *Sending a PDF manuscript of the Article to a New Jersey-based publisher does not constitute personal availment.*

Plaintiff first contends that sending a PDF manuscript to a publisher in New Jersey for peer review "*alone* is sufficient for purposeful direction." (Pl.'s Opp'n Br. 16.) In support of this point, Plaintiff cites two Third Circuit cases: *O'Connor* and *Grand Enterprise Group Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). (*Id.*) Both cases, standing for the proposition that a single purposeful direction may be sufficient to establish personal jurisdiction, are not persuasive here.

First, in *O'Connor*, a patron was hurt in a slip and fall while getting a massage at a resort in Barbados. *O'Connor*, 496 F.3d at 315. Prior to the patron's visit, the resort sent "seasonal newsletters" to the patron's home in Pennsylvania, including a brochure "highlighting the many treatments available at the on-site spa." *Id.* at 315-16. The patron liked what he saw in the brochure that was sent to him, and therefore, was induced to go to the spa, where he alleged the resort's

negligence ultimately caused his injuries. *Id.* at 316. In that context, the Third Circuit found that, as Plaintiff notes, mailings and phone calls into the forum state may constitute sufficient contacts to establish personal jurisdiction. *Id.* at 323.

Second, and similarly, in *Grand Enterprise*, a commercial transaction was at issue where a defendant "directed at least twelve communications to" a forum state and "engaged in negotiations for an agreement that would have created rights and obligations" between the plaintiff and the defendant located in that forum state. *Grand Enter.*, 988 F.2d at 479-80, 482-83. Those directed communications from the defendant included "numerous contacts with [the plaintiff] over the telephone and through the mails." *Id.* at 483. In that context, the Third Circuit credited that, as Plaintiff quotes, "[s]o long as [a contact] creates a substantial connection, even a single telephone call into the forum state can support jurisdiction." *Id.* at 482.

Here, Plaintiff does not allege that the PDF manuscript was sent to Plaintiff in a commercial context like in *O'Connor* or *Grand Enterprise* where a single *commercial* contact was sufficient to establish personal jurisdiction. (*See generally* Compl.; Pl.'s Opp'n Br.) To be clear, the "transaction" between Defendants and the publisher here was academic: the Article sought peer review so that it could be published in an academic journal. The Article is not alleged to have been sent to New Jersey so that Defendants could induce a New Jersey resident into a business agreement. (*See generally* Compl.; the Article, Ex. A to Compl.) Additionally, and perhaps most noteworthy, the PDF was allegedly mailed directly from Defendants to a *non-party*, the publisher, further distinguishing this case from the cases Plaintiff cites to where a defendant sent communications directly to the allegedly harmed *plaintiff* located in a given forum. (Compl. ¶¶ 37-41); *see also Redi-Data*, 2022 WL 3040949, at *4 (finding that the purposeful availment prong seeks to prevent defendants from "being haled into a forum 'solely as the result of random,

fortuitous, or attenuated contacts,' or due to the 'unilateral activity of another party or third person.'" (quoting *Burger King*, 471 U.S. at 475)).

As a final point, and common to Plaintiff's personal jurisdiction briefing, Plaintiff separately cites no case law to support its more general premise that where authors submit a scientific article to a publisher for peer review, they purposefully avail themselves of the jurisdiction and benefits of the *publisher's* home state. (*See generally* Pl.'s Opp'n Br.) This dearth of case law is perhaps unsurprising, given the potential harm to academic discourse if authors were subject to personal jurisdiction under such circumstances. Accordingly, the Court finds that Plaintiff's first factual contention as to why Defendants purposefully availed themselves of jurisdiction in New Jersey fails.

> b) *Plaintiff fails to show that Kradin's previous involvement with the New Jersey-based publisher that published the Article constitutes Kradin purposefully availing himself of New Jersey's laws.*

Plaintiff next contends that Kradin, "at least at one point[,] served as a contributing editor" at the New Jersey-based publisher that published the Article. (Pl.'s Opp'n Br. 15; Compl. ¶¶ 37-38, 41.) Plaintiff again cites no case law, nor does Plaintiff provide any further elaboration articulating why this fact might constitute purposeful availment. (*See* Pl.'s Opp'n Br. 15-16.) Regardless, Kradin's involvement with a non-party publisher that happens to be located in New Jersey is a random and attenuated contact at best. This is especially true considering that Plaintiff in its briefing suggests that Kradin may have only *previously* been in that role, rendering the contact even more attenuated. (*See id.* at 15 (stating that "Kradin at least at one point served as a contributing editor" for the New Jersey-based publisher).) Common sense dictates that previous employment or associations with a non-party publisher should not equate to a lifetime of purposefully availing oneself of the laws of the *publisher's* home state. Absent any explanation or

case law to persuade the Court otherwise, Kradin's alleged contact with a New Jersey-based publisher is insufficient to constitute purposeful availment.

> c)   *Plaintiff fails to show that serving as an expert witness, giving deposition testimony, and testifying in trials in New Jersey before the Article was published are sufficient contacts for this Court to exercise personal jurisdiction.*

Plaintiff's most prominent contentions are that Defendants' service as expert witnesses for talc litigants in New Jersey, deposition testimony in New Jersey, and trial testimony in New Jersey establish sufficient contacts to meet the constitutional requirements for the Court to exercise personal jurisdiction. First, even if the Court assumes in a light most favorable to Plaintiff that the Article, the publishing of which serves as the basis for Plaintiff's claims (*see* Compl. ¶¶ 145-76), did in fact target LTL, Plaintiff fails to show how Defendants' alleged litigation behavior constitutes purposeful availment. Once again, Plaintiff provides no case law to support the underlying proposition that serving as an expert witness, providing deposition testimony, and/or providing live testimony in a New Jersey court prior[7] to the alleged wrongful conduct underlying the instant litigation constitutes purposeful availment. (*See generally* Pl.'s Opp'n Br.) As such, Plaintiff once again fails to carry its burden of establishing that the contacts it alleges Defendants had with New Jersey are sufficient contacts to exercise specific jurisdiction.

---

[7] The Court notes that every instance of deposition testimony, live testimony, or expert witness service that Plaintiff submits as evidence in support its jurisdictional arguments predates the publishing of the Article in March 2020. (See Harvey Decl. ¶¶ 7-13, ECF No. 19-1; Pl.'s Ex. F (providing an expert report written by Emory in 2019 for a plaintiff in a New Jersey case), ECF No. 19-7; Pl.'s Ex. G (providing an expert report written by Emory in 2019 for a plaintiff in a New Jersey case), ECF No. 19-8; Pl.'s Ex. H (providing an expert report written by Kradin in 2017 for a plaintiff in a New Jersey case), ECF No. 19-9; Pl.'s Ex. I (providing an expert report written by Kradin in 2017 for a plaintiff in a New Jersey case), ECF No. 19-10; Pl.'s Ex. J (providing a deposition transcript for a deposition Kradin gave in Massachusetts for two New Jersey cases he served as an expert in), ECF No. 19-11; Pl.'s Ex. K (providing a June 2020 disclosure of cases that Maddox, Emory, and Kradin are involved in, all of which were filed on or before 2018), ECF No. 19-12; Pl.'s Ex. M (providing deposition testimony Maddox gave in New Jersey while he served as an expert in a New Jersey case in 2018), ECF No. 19-13; Pl.'s Ex. N (same description as Ex. M), ECF No. 19-14.)

To be sure, even if the Court were to assume that these contacts were sufficient to satisfy the purposeful availment prong of the Court's specific jurisdiction analysis, which they are not, Plaintiff again cites no case law and provides no persuasive argument to establish that litigation conduct that predates and exists separately from the alleged wrongful behavior in this litigation "aris[es] out of or relate[s] to" that previous litigation conduct. *Goodyear*, 564 U.S. at 923-24 (alterations in original). Instead, Plaintiff essentially contends that the alleged fraud undertaken in the Article is "related to" Defendants' litigation behavior prior to the Article's publishing, even though all of Plaintiff's present claims arise from the Article and the assertions made therein, not any assertion made prior to the Article relating to any previous litigation conduct. (Pl.'s Opp'n Br. 18-19; *see* Compl. ¶¶ 145-76.)

The Court finds this is far too expansive an understanding of the "relate to" language. The case Plaintiff cites to support its point illustrates why. In *Ford*, the defendant, Ford Motors, did "substantial business in the" states where the plaintiffs filed their suits, Minnesota and Montana. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 354–55 (2021). Despite this substantial connection, Ford tried to argue that although accidents involving its allegedly defective vehicles occurred in Montana and Minnesota, personal jurisdiction was not appropriate there because the plaintiffs' product liability claims arose out of the state where the cars were defectively manufactured or sold (i.e., not Minnesota or Montana). *Id.* at 356-57.

On these facts, the Supreme Court found that the second prong of the specific jurisdiction standard does not require "a strict causal relationship between the defendant's in-state activity and the litigation[.]" *Id.* at 362. Instead, as Plaintiff suggests, the Supreme Court found that its previous ruling "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* Importantly, however, the Supreme Court's holding was not expansive, but narrowly tailored:

this causation finding "does not mean anything goes[,] [i]n the sphere of specific jurisdiction, the

phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a

forum.'" *Id.*

> Evidencing the narrowness of the Supreme Court's holding, it found that:

>> plaintiffs' suit related to Ford's contacts with Michigan and
>> Montana [only] because Ford "systematically served a market in
>> Montana and Minnesota for the very vehicles that the plaintiffs
>> allege[d] malfunctioned and injured them in those states" by
>> engaging in significant activities in advertising, selling, and
>> servicing the same models of vehicles at issue in that case.

*Wade v. Kenan Advantage Grp., Inc.*, No. 20-18155, 2021 WL 4704962, at *9 (D.N.J. Oct. 8,

2021) (quoting *Ford*, 592 U.S. at 365). In other words, the "relate to" element was met due to the

expansiveness of Ford's contacts in Montana and Minnesota, and the extent to which Ford engaged

in significant activities in those states, and reaped the financial benefits of those activities.

Here, Plaintiff's allegations come nowhere near alleging that Defendants engaged in this

type of significant activity such that the Court could find that Defendants' litigation activities prior

to the Article's publishing "relate to" the alleged fraud perpetrated in the Article. Even construing

all of the Complaint's allegations as true, Plaintiff alleges, at most, that Defendants' publisher was

located in New Jersey (Compl. ¶ 41), Defendants previously testified against LTL in New Jersey

(*id.* ¶¶ 19-27), and Defendants previously served as experts in litigation in New Jersey (*id.*). These

activities taken together, and crediting that Defendants were allegedly paid for their services,

simply do not rise to the level of such significant "advertising, selling, and servicing" present in

*Ford.* (*Id.* ¶¶19-27.) Accordingly, *Ford* does not support Plaintiff's contention that Defendants'

publishing of the Article "relates to" Defendants' other prior litigation experiences in New Jersey.

Plaintiff therefore has failed to carry its burden of alleging facts sufficient to show that Defendants'

contacts in New Jersey were so ubiquitous that litigation behavior *prior* to the publishing of the Article can fairly be said to "relate to" Plaintiff's claims stemming from the Article's publishing.

> d)    *Neither knowledge of Plaintiff's principal place of business nor the residence of an individual referenced in the Article establishes purposeful availment.*

Two general unpersuasive contentions remain. The Court addresses each briefly. First, Plaintiff suggests that Defendants' knowledge that Plaintiff's principal place of business was New Jersey establishes personal jurisdiction. (Compl. ¶ 140.) Putting aside the fact that the Article never mentions LTL or Johnson & Johnson, to the extent Plaintiff brings intentional tort claims,[8] "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum is insufficient to establish jurisdiction." *3 Lab*, 2007 WL 2177513, at *5 (quoting *IMO Indus.*, 155 F.3d at 265-66) (finding instead that "[p]laintiff must . . . point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum"). Second, Plaintiff suggests that because human subjects utilized in the Article are New Jersey residents who filed cases in New Jersey against LTL, personal jurisdiction over Defendants is proper in New Jersey. (*See* Pl.'s Opp'n Br. 17.) Again, Plaintiff cites no case law to support this position, and the Court can find no reason why this would be the case. (*Id.*) Instead, case law suggests the opposite is true. *See, e.g.*, *Burger King*, 471 U.S. at 475 (finding that "unilateral activity of another party or third person," like non-defendant subjects in the Article, does not establish personal jurisdiction over a defendant).

---

[8] The Complaint asserts claims for product disparagement, fraud, and violation of the Lanham Act, which are all intentional torts. *See NR Media, Inc. v. Too Much Media*, Civ. No. 06-3988, 2008 WL 544670, at * (D.N.J. Feb. 26, 2008) (noting that trade libel is an intentional tort); *Kyko Global, Inc. v. Bhongir*, 807 F. App'x 148, 151 (3d Cir. 2020) (noting that "fraud is an intentional tort"); *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 108 (3d Cir. 2004) (Scirica, CJ., concurring) (noting that causes of action under the Lanham Act are intentional business torts). The Court will therefore analyze all three intentional tort claims together.

e)    *Plaintiff fails to establish specific jurisdiction under the intentional tort standard.*

Having determined that Defendants' contacts with the forum are insufficient to establish personal jurisdiction, the Court also considers the *Calder* effects test. Despite pleading three intentional tort claims, Plaintiff exclusively relies on the traditional specific jurisdiction test to support its position and only makes a passing reference to the *Calder* effects test. *See* Opp'n Br. at 20. "The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth"; the effects test emphasizes the *effects* a defendant's actions have in the forum state. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Under *Calder*, the Court considers whether: "(1) the defendant committed an intentional tort; (2) the forum was the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant 'expressly aimed' the tortious activity at the forum state." *Id.* (citing *IMO Indus.*, 155 F.3d at 265-66 ). To establish that a defendant "expressly aimed" conduct at a forum, "the plaintiff has to demonstrate [that] 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Marten*, 499 F.3d at 298 (quoting *IMO Indus.*, 155 F.3d at 266).

If a plaintiff fails to show that the defendant "manifest[ed] behavior intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the effects test." *Id.* (alteration in original) (internal quotations and citations omitted). A plaintiff's residence "does not on its own create jurisdiction over nonresident defendants." *Id.* Instead, "[j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.*

Plaintiff fails to sufficiently allege or otherwise demonstrate that Defendants expressly aimed their tortious conduct at New Jersey. Even accepting Plaintiff's premise that Defendants intended to harm Plaintiff in New Jersey by writing the Article, this fact is sufficient to show only that Plaintiff "felt the brunt of the harm in the forum," not that the Article was expressly aimed at New Jersey. (*See generally* Compl.) To be sure, the Article never expressly mentions New Jersey, nor does it mention Johnson & Johnson, LTL, or any other New Jersey entity by name. (*See generally* the Article, Ex. A to Compl.)

Here, Plaintiff's allegations make clear that New Jersey was not the focal point of the tortious activity, either impliedly or expressly. For example, Plaintiff alleges that Defendants published their statements "in the public domain, to the scientific community, and in various courts across the *country*." (Compl. ¶ 66 (emphasis added).) This allegation, coupled with all the reasons outlined above detailing the insufficiency of Defendants' contacts with New Jersey, renders Plaintiff's allegations unsuccessful under the *Calder* test.

3.   Jurisdictional Discovery

In light of the Court's findings with respect to specific jurisdiction, Plaintiff alternatively asks for jurisdictional discovery so that it may "ascertain the full extent of Defendants' relevant contacts with the forum." (Pl.'s Opp'n Br. 20.) Jurisdictional discovery, however, is ordinarily allowed only where "factual issues" persist that further discovery may help clarify. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (citing *Metcalfe*, 566 F.3d at 331, 336). In other words, jurisdictional discovery is only appropriate where it is not clearly frivolous. *Metcalfe*, 566 F.3d at 335-36.

Here, there do not appear to be any factual disputes that may be resolved by further discovery. This Court has interpreted all of Plaintiff's alleged jurisdictional facts as true and resolved any disputes in favor of Plaintiff. Critically, as the Court repetitively noted above,

20

Plaintiff's allegations fail to establish that this Court's exercise of specific jurisdiction is appropriate. Moreover, Plaintiff supplied little to no case law to support any of its assertions to this end. *See Canon Fin. Servs., Inc. v. ServeCo N. Am., LLC*, No. 19-17910, 2020 WL 4035460, at \*6 (D.N.J. July 16, 2020) (finding that a plaintiff's failure to cite any relevant case law to support why a certain contact established personal jurisdiction reflected a failure by plaintiff to carry its burden of establishing that the Court's exercise of personal jurisdiction was appropriate); *McClung v. 3M Co.*, No. 16-2301, 2019 WL 4668053, at \*8 (D.N.J. Sept. 25, 2019) (finding that where a plaintiff fails to provide any case law to establish why a certain contact justifies the exercise of personal jurisdiction, such failure "skirts" the plaintiff's burden, and noting that it is not the Court's responsibility to find case law to support a plaintiff's specific jurisdiction contentions). As such, the issue here is not factual disputes regarding jurisdiction, but that Plaintiff failed to carry its burden of convincing the Court that personal jurisdiction is or may be proper. As such, jurisdictional discovery is not appropriate, and Plaintiff's request to engage in it is denied.

### C.    RULE 12(b)(6) ANALYSIS

Because the Court concludes that it lacks personal jurisdiction over Defendants, it cannot entertain Defendants' Motion to Dismiss under Rule 12(b)(6). *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017).

IV.   **CONCLUSION**

For the reasons outlined above, Defendants' motion to dismiss under Rule 12(b)(2) is granted. An order consistent with this Opinion will follow.

Date: April 30, 2024

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE